UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TROLL SMOKEHOUSE,
a Michigan Corporation,

    Plaintiff,

v.

REICH a German Corporation, and
BRILTRAN LLC, an Ohio Corporation,

    Defendants.

Case No. 21-
Hon.

_____/
THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR.
(P34564) KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan
Avenue Saginaw,
Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com
_____

There is no other pending or resolved civil action arising out of
the transactions or occurrences alleged in this Complaint.

**<u>PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY</u>**

NOW COMES Plaintiff, TROLL SMOKEHOUSE, by and through their attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendants, REICH a German Corporation, (hereinafter REICH) and BRILTRAN LLC, an Ohio Corporation, (herein after BRILTRAN) stating as follows:

## COMMON ALLEGATIONS

1. That at all times material hereto TROLL SMOKEHOUSE is a Michigan Corporation licensed and doing business in Bay County Michigan, with its location at 2590 Old Kawkawlin Rd., Kawkawlin, Michigan 48361.

2. That Defendant BRILTRAN, LLC. (hereinafter 'BRILTRAN') is a foreign corporation with its headquarters located in Ohio at 4819 Harold Glenn Court, Galena, Ohio 43021.

3. That at all times material hereto, BRILTRAN did act as the agent, express and or implied or ostensible of the Defendant REICH.

4. That at all times REICH, represented and manifested BRILTRAN to the Plaintiff's and others of their status as their extension and exclusive agent for purposes of sale, installation and servicing of the REICH products.

5. That Defendant REICH is a foreign corporation and is located at Kappelweg 2073579 Schechingen, Germany.

6. That the Defendant's and the Plaintiffs are all citizens of different states, and as such, complete diversity exists for purposes of Federal Court Jurisdiction pursuant to 28 USC § 1332, *et seq*.

7. That the cause of action did arise in the County of Bay, State of Michigan.

8. That the contract surrounds the purchase by Plaintiffs of a REICH Artie ICH air master IC 10000 BE G 505 H, special dimension.

9. That this device is commonly known as a "smoker" which is used in the commercial market.

10. That REICH, individually and through their agent BRILTRAN represented themselves as skilled and knowledgeable in the area of 'smokers', or 'smoke ovens' with the understanding that Plaintiff intended to utilize said smoker to its full extent, which included a myriad of uses specified and advertised by Defendant REICH.

11. That the smoker was a commercial grade smoker, and the price of the smoker was $209,000 for the equipment costs, which was to also comprise installation.

12. That, furthermore, Defendants and both of them did represent that if Plaintiff purchased the stock commercial smoker that they would supply skilled and knowledgeable professional engineers who would install said smoker.

13. That Defendants also represented that said universal smokehouse REICH Artie ICH air master IC 10000 BE G 505 H (hereinafter referred to as 'REICH SMOKER') would also perform drying, reddening, smoking, cold smoking, hot-air cooking, baking, roasting, steaming, maturing, evacuating. (See page 4 on the BRILTRAN description).

14. That, furthermore, Defendants did represent that the capacity of said system would allow for sausages, ring sausage, roast beef, short cutoffs, meatloaf, cold cuts caliber at 90, 75, and 60 millimeters.

15. The Defendants also represented that said universal smokehouse, i.e., REICH SMOKER "with its technologically superb air recirculation system, referred to in the brochure as, The Air Master guarantees maximum performance and short processing times for optimal product quality."

16. That Defendants also falsely represented that the REICH SMOKER would perform in an as warranted manner including but not limited to the following:

   a. The air treatment unit with the high-performance fans, heating register and humidifying equipment would be integrated into the head section of the plant. The treatment would be heated, cooled, dried and warrantied for 5 years.

   b. That pursuant to the special treatment process, fresh air or smoke would be added and the air thus treated. Would be blown into the treatment chamber with special injection canals;

   c. That the 'air master' air routing system would be designed so that the selected air volume produces a strongly turbulent air flow which 'guarantees a uniform treatment of the waves';

   d. The 'air master' would offer versatile treatment options and that the preselected working programs would be automatically regulated by various settings of the tightly-closings fresh air and exhaust flaps;

   e. The treatment processes would be programed by entering a treatment temperature, relative humidity, processing time or the desired product core temperature;

  f. A product-friendly delta-key treatment would be possible at every program step;

  g. That after the end of the program cycle, the treatment air would be evacuated before the chamber doors opened. In addition, the fresh air and exhaust flaps would open with a pneumatic cylinder in order to permit uniform air exchange;

  h. That thereafter, the goods could then be cooled down to a desired core temperature with a built-in refrigeration and cooling shower; (see page 5 of documents supplied);

  i. That the Defendants also represented that the universal smokehouse and REICH SMOKER, would have "four chamber parts, a <u>tightly welded modular design</u>, manufactured completely of nickel chrome steel MATC. An oh. 1.4301 (not element construction). Also equipped with a chamber bottom, with a sufficient loading capacity and integrated access ramp for easy loading of the chamber carts.

  j. That irregularities of the on-site ground conditions could be compensated for with stable adjustable feet. (See page 6).

  k. That the Defendants did make representations concerning the universal smokehouse as stated in the representations provided prior to the sale of the product. (See pages 7-through page 27).

  l. That they would provide skilled and knowledgeable technicians who would properly install and train the plant personnel on the use of the REICH SMOKER.

  m. That said technicians would also ensure that the REICH SMOKEHOUSE worked as warranted before they left the plant and would respond with their team of technicians in the event any problems arose during the operation of the smokehouse.

17.   That Plaintiff relied on the representations made by the Defendant and their agents.

18. That said representations were material representations of fact.

19. That said actions on the part of Defendant also breach their contract with the Plaintiff herein.

## COUNT I BREACH OF CONTRACT

20. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 19 of their Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

21. That Plaintiff enter into negotiations for purchase of said RIECH SMOKER for the amount of $209,000.00.

22. That said smoker did not comport to the specifications and warranties provided by the Defendant.

23. That such actions on behalf of the Defendant, as more fully set forth below, constitute a breach of contract.

24. That in fact, Defendant's also agreed to supply installers that were skilled and expert in installing the Reich Smokehouse.

25. That Defendant's did breach the contract by failing to do so.

26. That said action on the part of the Defendant do constitute a bad faith breach by Defendant.

27. That in fact, Defendants have breached the contract as attached to the complaint as **Exhibit 1.**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II BREACH OF IMPLIED WARRANTY OF FITNESS AND MERCHANABILITY

28. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 19 of their Common Allegations, word for word and Count I in paragraphs 20-27 paragraph for paragraph, as if fully restated herein.

29. That the smoker in the present case was not fit for its intended and reasonably foreseeable purposes as represented, and therefore caused Plaintiff injury damages and loss of business, since it did not perform in the manner and way in which it was warranted.

30. That in fact, said REICH SMOKER did not perform in the manner as represented and did not prepare or properly allow for sausages, rings sausage, short cut offs, meat, cold cuts, jerky, Vienna's, brats, summer sausages and snack sticks.

31. That, furthermore, said Defendant's smoker did not work as represented, as the "air master" air routing system did not work as allegedly designed to

provide for the selected volume or produce a turbulent air flow which "guaranteed a uniform treatment of the waves."

32. That in fact, said air routing system did not evenly cook, and in fact did burn the product and failed to otherwise provide a uniform treatment of heat waves in the cooker, causing damage to the meat, and inability to utilize the system in the manner as represented.

33. That as a direct and proximate result of the breach of implied warranties by the Defendant Plaintiff has been damaged as more fully set forth below.

34. Plaintiff has suffered and will continue to suffer severe economic damages and loss to the business and prospective business expectations.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III BREACH OF EXPRESS WARRANTY

35. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 20 of their Common Allegations, word for word and Count I- 21 through 27 and Count II- 28 through 34 paragraph for paragraph, as if fully restated herein.

36. That set forth in the common allegations, Defendant did create express warranties in its representations, statements, and statements made in writing, and orally that the right smoker had certain character of the states and would meet certain standards as outlined above in the common allegations and in count I.

37. That said statements made by the Defendant did lead the Plaintiff to believe that such statements had been made to induce a bargain, and as such are sufficient to create an express warranty. See *Hansen v. Firestone Tire and Rubber Company*, 276 F.2d 254, 257 (6th Cir. 1960) (making such affirmative statements will increase the exposure of the entity making the statements to include any injuries caused by a breach of those representations. id.)

38. That Defendant did in fact breach said express and implied warranties of merchantability made by the Defendant and such breach was a proximate cause of the Plaintiff's injuries. (See *Kupkowski v. Avis Ford, Inc.,* 395 Mich. 155, 235 N.W.2d 324 (Mich. 1975); *Cavalier v. Werner Co.,* 976 F. Supp. 672,679 (E.D. Mich. 1997).

39. That furthermore, the Defendants did make the statements as set forth in the common allegations, and also specifically made representations that the BRILTRAN technicians were skilled and expert in installation of the

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

REICH SMOKER, and also made representations that such skilled personnel would be utilized or hired by the Defendant to properly set up, install, and created an environment whereby said REICH SMOKER could be utilized in the manner as represented by the Defendant.

40. That when said representations were made, they were false when made, and were material representations.

41. That Defendant knew said statements were false or were made recklessly without regard for their truth or falsity.

42. That the Defendant did intend the Plaintiff to act on their representations and purchase the machine in question.

43. That in reliance upon the representations made by the Defendant and BRILTRAN, Plaintiff paid $209,000+ dollars for said product.

44. That as a direct and proximate result of the Plaintiff's reliance on the Defendant's statements, Plaintiff has been damaged to the tune of over $ 4.6 million dollars (to the date of the filing of this complaint).

45. The Plaintiff's also claim exemplary damages against Defendant for their conduct. See *Oppenhuizen v. Wennersten*, 2 Mich. App. 288, 139 N.W.2d 765 (Mich. Ct. App. 1966)

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND

DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT IV NEGLIGENCE BY DEFENDANT BRILTRAN

46. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 18 of their Common Allegations, word for word and Count I- 1 through 27 paragraph and Count II- 28- 34 paragraph and Count III 35-45 for paragraph, as if fully restated herein.

47. That Defendant BRILTRAN, is an Ohio Corporation, and did represent itself as being skilled and directly aligned and the agent of Defendant REICH.

48. That in fact, the Defendant BRILTRAN did represent itself as being skilled in the installation and servicing of said product i.e., the REICH SMOKER.

49. That as such, Defendant BRILTRAN did owe a duty to the Plaintiff, to properly install, and provide expertise in the installation and operation of said REICH SMOKER.

50. That the Defendant, BRILTRAN did breach its duty to the Plaintiff in one or more of the following ways:

    a. That the Defendant BRILTRAN was not skilled or expert in installation or the operation or use of the REICH smoker;

b. That in fact, the Defendant BRILTRAN did hire third parties to do welding, and other activities with regard to the REICH smoker, and then never paid them;

c. That the Defendant BRILTRAN set up the REICH smoker in such a way as to cause damages to the Plaintiff and then increase the chances and possibility that the airflow would not react with the cooker in the manner as represented;

d. That they failed to provide services and installation and expert direction as promised, in a workmanlike manner, causing significant damages to the Plaintiff and abandoned the Plaintiff's.

e. In misrepresenting their credentials as skilled service and installation technicians for Defendant REICH;

f.  There as a direct and proximate cause of Defendant's negligence, Plaintiff has been severely damaged as stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

### **COUNT V- NEGLIGENT HIRING BY DEFENDANT REICH**

51. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 20 of their Common Allegations, word for word and Count I 1 through 27 paragraph and Count II 28- 34 paragraph and Count III 35 through 45 paragraph and Count IV 46- 50 for paragraph, as if fully restated herein.

52. That the Defendant REICH did represent that as part of the sale of the REICH smoker, they would supply skilled, service technicians, who would install the product properly.

53. That as such the Defendant like did have a duty to investigate and provide service and maintenance companies and an installation company that could perform in a workmanlike manner and were skilled and knowledgeable in the installation and operation of the REICH smoker.

54. That that Defendant did breach its duty to the Plaintiff's herein, in supplying in inferior installation and service company, here, Defendant BRILTRAN who of failed to set up said smoker in a proper manner, and appeared not to understand much if anything about the smoker.

55. That Defendant BRILTRAN did not appear to have knowledge during the installation, which was demonstrated by the fact that they had a 'salesman install the smoker and had to ask another engineer from Reiser how to set up the wiring, while installing the REICH smoker.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

56. That as a direct and proximate result of the Defendant's failure to properly hire skilled installation and operation experts, Plaintiff has been severely damaged.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,

THE MASTROMARCO FIRM

Dated: October 4, 2021

By: */s/ Victor J. Mastromarco, Jr.*
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue Saginaw,
Michigan 48602
(989) 752-1414

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TROLL SMOKEHOUSE,
a Michigan Corporation,

      Plaintiff,

v.

REICH a German Corporation, and
BRILTRAN LLC, an Ohio Corporation,

      Defendants.
_____/

Case No. 21-
Hon.

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564) KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com
_____

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, TROLL SMOKEHOUSE, a Michigan Corporation by and through their attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all of the above issues, unless otherwise expressly waived.

                                      Respectfully submitted,
                                      THE MASTROMARCO FIRM

Dated: <u>October 4, 2021</u>       By:   <u>*/s/ Victor J. Mastromarco, Jr.*</u>
                                            VICTOR J. MASTROMARCO, JR. (P34564)
                                            KEVIN J. KELLY (P74546)
                                            Attorneys for Plaintiff
                                            1024 N. Michigan
                                            Avenue Saginaw,
                                            Michigan 48602
                                            (989) 752-1414